UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| ANTHONY WHEELER, | ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12-CV-2281 |
| DR. PAUL TALBOT, et al, | ) ) ) |
| Defendants. | ) ) |

**OPINION**

This case is before the court for ruling on various pro se Motions filed by Plaintiff, Anthony Wheeler. This case is currently set for a merit review hearing on January 28, 2013, at 10:00 a.m. Following a careful review of Plaintiff's Motions, this court rules as follows: (1) Plaintiff's Motion for Leave to File his Third Amended Complaint (#15) is DENIED; (2) Plaintiff's Motion for Leave to Amend his Complaint (#18) is GRANTED; (3) Plaintiff's Motions for Partial Declaratory Judgment (#12, #16, #26) are DENIED as premature; (4) Plaintiff's Motions for Appointment of an Expert Medical Witness (#13, #23) are DENIED as premature; (5) Plaintiff's Motions for Appointment of a Health Care Monitor (#14, #22) are DENIED; (6) Plaintiff's Motions for Appointment of Counsel (#17, #21) are DENIED at this time; (7) Plaintiff's Emergency Motion for Leave to File Motion for Temporary Restraining Order and Preliminary Injunction (#9) remains pending; and (8) Plaintiff's Motion for Leave to File Interlocutory Appeal (#19) is DENIED as this court has not yet ruled on his request for Temporary Restraining Order and Preliminary Injunction so there is no order to appeal from.

BACKGROUND

On October 23, 2012, Plaintiff filed a pro se Complaint (#1) against Defendants, Dr. Paul Talbot, Keith Anglin, S.A. Godinez, Louis Shicker, Yolande Johnson, Kevin Gilson, Susann Griswold-Bailey, Marcia Keys, Jaclyn O'Day, D. Laker, Sherry Benton and Jackie Miller. In Count 1, Plaintiff alleged that double bunking and double celling at the Danville Correctional Center amounted to cruel and unusual punishment. In Count 2, Plaintiff alleged that the soy-based diet provided by the Danville Correctional Center resulted in a serious medical condition and that he has been denied a non-soy diet. In Count 3, Plaintiff alleged that Defendant Dr. Talbot has refused to provide medical treatment for two large, protruding keloid scars on his chest and groin area. In Count 4, Plaintiff alleged that the Danville Correctional Center was engaging in a longstanding, widespread and systematic practice of illegal profiteering and price gouging. In Count 5, Plaintiff alleged that Defendants Shicker and Talbot have been deliberately indifferent to his serious medical needs by refusing to provide treatment for an H. pylori bacterial infection. In Count 6, Plaintiff alleged that he was verbally assaulted for filing grievances and writing letters regarding his complaints. Plaintiff attached various exhibits to his pro se Complaint including a "State Law Complaint," copies of responses to his grievances, medical records and newspaper articles. This court notes that lab results Plaintiff provided show that he tested negative for H. pylori on April 29, 2011.

On November 15, 2012, this court held a merit review hearing. After discussing the case with Plaintiff, who appeared by video, this court stated that Plaintiff was allowed to

proceed on Counts 1, 3, 5 and 6 of his Complaint. Plaintiff was not allowed to proceed on Count 4. This court stated that Count 2 was stayed until the conclusion of a class action claim regarding soy diets that was being handled by Senior United States District Judge Harold A. Baker. This court further stated that Plaintiff was allowed until December 31, 2012, to amend his complaint to include specific allegations related to the Defendants named in the complaint.

On December 11, 2012, Plaintiff filed his Second Amended Complaint (#11) per order of this court. Plaintiff stated that Defendants Laker, Godinez, Benton, Gilson, Miller and O'Day systematically denied his grievances in violation of his constitutional rights.

PENDING MOTIONS

I. MOTIONS TO AMEND

On December 17, 2012, Plaintiff filed a Motion for Leave to File Third Amended Complaint (#15). Plaintiff asked to add Count 7 to his Complaint alleging that Defendants Lake, Godinez, Benton, Gilson, Miller and O'Day are liable for their failure to act in the face of known constitutional violations. Plaintiff's Motion (#15) is DENIED. This court concludes that these allegations should not be a separate count, but instead provide a basis for liability for the constitutional violations Plaintiff has alleged in his Complaint.

On January 3, 2013, Plaintiff filed a Motion for Leave to Amend State Law Supplemental Jurisdiction Claims (#18). Plaintiff asked to add a state law claim for medical malpractice against Dr. Talbot. Plaintiff's Motion for Leave to Amend (#18) is GRANTED. This court will exercise supplemental jurisdiction over Plaintiff's medical malpractice claims

against Dr. Talbot. This court declines to exercise supplemental jurisdiction over the State Law Complaint attached to Plaintiff's original pro se Complaint (#1).

## II. MOTIONS FOR DECLARATORY JUDGMENT

On December 11, 2012, Plaintiff filed a Motion for Partial Declaratory Judgment (#12). This court is not entirely clear regarding the relief Plaintiff is seeking, but it appears that Plaintiff is asking for judgment on Count 7 of his Complaint. First of all, this court has denied Plaintiff leave to amend his Complaint to add Count 7. Most importantly, Plaintiff seems to be asking this court to make factual findings that various Defendants violated his constitutional rights by failing to act on his grievances. This court cannot make these factual findings at this stage of the proceedings.

On December 18, 2012, Plaintiff filed a Second Motion for Partial Summary Judgment (#16). Plaintiff asked for a declaratory judgment against Defendant Godinez, stating that Godinez failed to correct the actions and inactions of his subordinates. Again, Plaintiff cannot make this factual finding at this stage of the proceedings.

On January 17, 2013, Plaintiff filed his Third Motion for Partial Declaratory Judgment (#26). Plaintiff stated that his First and Second Motions for Partial Declaratory Judgment should be granted because no response was filed by the response date stated on the docket sheet. The response date is automatically set by the electronic filing system utilized by this court. In this case, however, the response dates are meaningless because this case is still in the merit review stage of proceedings and no Defendants have yet been served with summons and a copy of Plaintiff's Complaint. Therefore, no Defendants have appeared in this action

and there is no one to respond to Plaintiff's numerous motions. Because this court has concluded that Plaintiff is not entitled to a declaratory judgment at this stage of the proceedings, his Third Motion (#26) must also be denied.

For all of the reasons stated, Plaintiff's Motions for Partial Declaratory Judgment (#12, #16, #26) are DENIED as premature. This court will not consider any such motions until discovery is completed and a full factual record can be provided to the court.

### III.  MOTIONS FOR APPOINTMENT OF EXPERT MEDICAL WITNESS

On December 11, 2012, Plaintiff filed his First Motion for Appointment of an Expert Medical Witness for Limited Purposes (#13). Plaintiff stated that he needs a medical expert to show the seriousness of his medical condition. Plaintiff again attached copies of responses to his grievances and medical records (which again show that he tested negative for H. pylori). On January 15, 2013, Plaintiff filed a Second Motion for Appointment of an Expert Medical Witness (#23), noting that this court had not yet responded to his First Motion. Plaintiff attached his affidavit and stated that Defendants have refused to treat him for his painful keloid scars and the H. pylori bacterial infection.

This court concludes that appointment of an expert medical witness would be premature at this very early stage of the proceedings. Accordingly, Plaintiff's Motions for Appointment of an Expert Medical Witness (#13, #23) are DENIED as premature.

### IV.  MOTIONS FOR APPOINTMENT OF HEALTH CARE MONITOR

On December 13, 2012, Plaintiff filed his First Motion for Appointment of a Health Care Monitor (#14). Plaintiff did not explain why a health care monitor is necessary in this

case and instead argued only that a health care monitor is not a special master and may be appointed in a prisoner case under the PLRA. On January 15, 2013, Plaintiff filed a Second Motion for Appointment of a Health Care Monitor (#22), stating that this court had not yet responded to his First Motion.

This court concludes that there is no need for the extraordinary and unprecedented step of appointing a health care monitor in this case. Therefore, Plaintiff's Motions for Appointment of a Health Care Monitor (#14, #22) are DENIED.

## V. MOTIONS FOR APPOINTMENT OF COUNSEL

On December 4, 2012, this court entered a text order and denied Plaintiff's Motion to Appoint Counsel at this stage of the proceedings. This court noted that Plaintiff had shown that he had made attempts to retain counsel on his own. This court stated:

> It is too early in the case to make a determination whether Plaintiff's claims are sufficiently meritorious such that appointing counsel would make a difference in the case. Lawyers who accept appointments to represent pro se plaintiffs in civil cases are not guaranteed any compensation. Thus, before this court takes the significant step of seeking out a lawyer willing to take the case, the court has an obligation to insure that the issues raised in a particular case are both substantial and meritorious. Further, the number of lawyers able to take court appointments is very limited. Therefore, it is

        simply impossible to accommodate all of the requests of pro se plaintiffs, mostly prisoners, who request a lawyer.

Since that text order was entered, Plaintiff has filed two more motions asking this court to appoint counsel (#17, #21). However, nothing has changed in the short amount of time since the order was entered. Therefore, Plaintiff's Motions to Appoint Counsel (#17, #21) are DENIED.

## VI.  EMERGENCY MOTION

On December 4, 2012, Plaintiff filed an Emergency Motion for Leave to File Temporary Restraining Order and Preliminary Injunction (#9). Plaintiff argued that he is entitled to injunctive relief because he has been repeatedly and systematically denied much needed medical care for his serious medical needs.

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Wheeler v. Wexford Health Sources, Inc., 2012 WL 4952258, at *1 (S.D. Ill. 2012), quoting Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008). The Seventh Circuit recently recognized, in a case involving a very similar claim made by Plaintiff, that a "prisoner's view of optimal medical treatment can be a weak ground for superseding the views of competent physicians." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 682 (7th Cir. 2012). The Seventh Circuit then stated that, "[u]ntil evidence has been submitted, it is not possible to know whether Wheeler really is suffering irreparable harm and

otherwise has a good claim for relief." <u>Wheeler</u>, 689 F.3d at 682.

At this stage of the proceedings, no Defendants have been served and no Defendants have appeared in this action. Therefore, before this court takes the extraordinary step of awarding injunctive relief, it needs to be advised of Defendants' response to Plaintiff's request and receive evidence on the issue. Therefore, this court takes this motion under advisement and it remains pending at this time. This court notes that, when evidence was submitted to the district court in the Southern District of Illinois, the court concluded that Plaintiff did not show that he was suffering irreparable harm and was not entitled to injunctive relief. <u>Wheeler</u>, 2012 WL 4952258, at *2. In fact, the court stated that the evidence showed that Plaintiff "has been receiving regular medical care since his transfer to Danville Correctional Center." <u>Wheeler</u>, 2012 WL 4952258, at *2. The court also found that Plaintiff has exaggerated his medical condition. These findings provide strong support for this court's conclusion that the issue of injunctive relief in this case must be taken under advisement and decided only after additional information is provided to the court.

VII.  MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL

On January 8, 2013, Plaintiff filed a Motion to File an Interlocutory Appeal as of Right Instanter (#19). Plaintiff stated that this court denied his Motion seeking injunctive relief and he wanted to file an appeal from that order. In fact, however, this court has not ruled on the motion seeking injunctive relief and it remains pending. Therefore, Plaintiff's Motion to File an Interlocutory Appeal (#19) is DENIED.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion for Leave to File his Third Amended Complaint (#15) is DENIED

(2) Plaintiff's Motion for Leave to Amend his Complaint (#18) is GRANTED.

(3) Plaintiff's Motions for Partial Declaratory Judgment (#12, #16, #26) are DENIED as premature.

(4) Plaintiff's Motions for Appointment of an Expert Medical Witness (#13, #23) are DENIED as premature.

(5) Plaintiff's Motions for Appointment of a Health Care Monitor (#14, #22) are DENIED.

(6) Plaintiff's Motions for Appointment of Counsel (#17, #21) are DENIED at this time.

(7) Plaintiff's Emergency Motion for Leave to File Motion for Temporary Restraining Order and Preliminary Injunction (#9) remains pending.

(8) Plaintiff's Motion for Leave to File Interlocutory Appeal (#19) is DENIED as this court has not yet ruled on his request for Temporary Restraining Order and Preliminary Injunction so there is no order to appeal from.

(9) This case is remains scheduled for a merit review hearing on January 28, 2013, at 10:00 a.m.

ENTERED this 25th day of January, 2013

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE